IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

CLAY SHEFF,

        Petitioner,

v.                                                CV 17-0018 WPL/SCY

UNITED STATES DEPARTMENT
OF JUSTICE, Civil Division, Radiation
Exposure Compensation Program,

        Respondent.

**ORDER GRANTING MOTION TO DISMISS**

Clay Sheff has filed a petition for judicial review of the Department of Justice's (DOJ) denial of his claim for payment of benefits under the Radiation Exposure Compensation Act (RECA or the Act), 42 U.S.C. § 2210 note (2012). The parties dispute whether Sheff qualifies for benefits under the "downwinder" provision of the Act, which allows DOJ to award benefits to an "individual who was physically present" in a designated downwind geographic area when the United States conducted atmospheric nuclear testing. RECA § 4(a)(2). Sheff has been diagnosed with cancer of the pharynx, one of RECA's specified compensable diseases. DOJ has moved to dismiss Sheff's claim on the ground that his *in utero* presence during the designated exposure period does not meet the criteria for compensation under the Act. (Doc. 13.)

Sheff raises both procedural and substantive defenses to DOJ's motion. Sheff first claims that DOJ's motion to dismiss is not consistent with the standard of review of agency actions under the Administrative Procedures Act (APA), 5 U.S.C. § 500 et seq. (2017). He relies upon *Olenhouse v. Commodity Credit Corp.*, 42 F.3d 1560, 1580 (10th Cir. 1994), to argue that the Federal Rules of Appellate Procedure control his appeal, and that summary disposition by

motions to affirm or to dismiss are conceptually incompatible with the nature and purpose of an appeal. He further claims that the resolution of this case requires me to review the facts in the administrative record relating to his physical presence in an affected area.

I will address the last issue first. Sheff states in his Response that he was born in the early part of January 1963, while DOJ admits that Sheff's mother was present in a downwind area during the exposure period beginning on June 30, 1962 and ending on July 31, 1962. Thus, there is no dispute that he was *in utero* during the exposure period, so there is no need to review the administrative record on this issue.

Further, although *Olenhouse* outlined the principles of judicial review of agency action under the APA, "nothing in *Olenhouse* (or, for that matter, other controlling case law or the APA itself) precludes an APA-based complaint from being summarily dismissed pursuant to Federal Rule of Civil Procedure 12(b). Indeed, *Olenhouse* is silent with respect to the propriety of motions to dismiss APA-based claims." *Kane Cty. Utah v. Salazar*, 562 F.3d 1077, 1086 (10th Cir. 2009). "*Olenhouse* aside, case law firmly establishes that APA-based claims can, if appropriate, be summarily dismissed." *Id.*; *see also Hackwell v. United States*, 491 F.3d 1229, 1233 (10th Cir. 2007). There is no merit to Sheff's procedural argument that I must review the administrative record to decide whether he is entitled to compensation because he was present *in utero* during the exposure period.

The parties are in essential agreement as to the statutory and regulatory background for this case. RECA was enacted on October 15, 1990, to establish an administrative program for claims relating to the United States' atmospheric nuclear testing, and claims relating to uranium industry employment. RECA of 1990, Pub. L. No. 101-426, § 2, 104 Stat. 920. Recognizing that certain individuals were "subjected to increased risk of injury and disease to serve the national

security interests of the United States," the Act provides for partial restitution to individuals who were exposed to increased health risks and who later developed serious illnesses. *Id.* at § 2(a)(5); *see generally*, Tori Ballif, Note, *Political Fallout: Designing a Radiation Exposure Compensation Scheme*, 31 STAN. ENVTL. L. J. 253 (2012); NATIONAL RESEARCH COUNCIL, ASSESSMENT OF THE SCIENTIFIC INFORMATION FOR THE RADIATION EXPOSURE SCREENING AND EDUCATION PROGRAM (2005), https://www.nap.edu/read/11279. RECA established a system for awarding lump-sum compensation to persons contracting certain diseases following presumed exposure relating to: 1) downwind fallout (downwinder claims), RECA § 4(a)(2)(A) & (B); 2) certain uranium industry employment (uranium worker claims), *id*. at § 5; and 3) participation at atmospheric nuclear testing sites (onsite participant claims), *id.* at § 4(a)(2)(C).

In the context of Sheff's claim, Section 4(a)(2) of RECA defines the eligibility for downwinder claims as:

> Any individual who -
>
> (B) was physically present in the affected area for the period beginning on June 30, 1962, and ending on July 31, 1962;
> . . . .
>
> and who submits written medical documentation that he or she, after such period of physical presence . . . contracted a specified disease . . . .

DOJ issued downwinder regulations to describe the criteria for eligibility for compensation to downwinders. As pertinent, these regulations require:

> (2) That the claimant was physically present at any place within the affected area for the entire, continuous period beginning on June 30, 1962 and ending on July 31, 1962; and
>
> (b) That after such period of physical presence the claimant contracted one of the following specified compensable diseases . . .

28 C.F.R. § 79.22. Neither the statute nor the regulations specifically address whether persons who were *in utero* during the exposure period were "physically present."

When Congress amended RECA in 2000 it broadened the scope of coverage in several ways. *See* RECA Amendments of 2000, Pub. L. No. 106-245, 114 Stat. 501. The amendments provided compensation to new claimant groups (*i.e.*, uranium millworkers and uranium ore transporters), identified additional compensable diseases, established lower radiation thresholds for uranium miners, added additional geographic regions to the downwinder provisions, removed certain disease restrictions, and extended RECA's sunset provision to year 2022. *See id*. at § 3; Ballif, *supra*, at 279-80. However, Congress did not expand the scope of coverage for downwinders in any other respect, and § 4(a)(2)(B) was left unchanged. While DOJ promulgated regulations following enactment of the 2000 Amendments, the issue of downwinder *in utero* exposure was not addressed.

In evaluating DOJ's motion to dismiss, I must accept as true all well-pled factual allegations in Sheff's Petition and must view them in the light most favorable to him. *Brokers' Choice of Am., Inc. v. NBC Universal, Inc*., 757 F.3d 1125, 1136 (10th Cir. 2014). But purely conclusory allegations are not entitled to be presumed true. *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009). I may take judicial notice of the Radiation Exposure Compensation Program Decision and Appeal Memorandum attached to the Petition without converting the motion to a motion for summary judgment. *Pace v. Swerdlow*, 519 F.3d 1067, 1072-73 (10th Cir. 2008). When evaluating the motion to dismiss, I may not weigh potential evidence that the parties may present at trial, but focus on whether Sheff's Petition is legally sufficient to state a claim for which relief may be granted. *Brokers' Choice*, 757 F.3d at 1135.

On September 4, 2015, Sheff applied to the Radiation Exposure Compensation Program for an award of compensation under the downwinder provision. Sheff claimed that he was diagnosed with cancer of the pharynx, one of RECA's covered diseases, and that he was *in utero* in Coconino County, Arizona, one of the designated areas downwind from atmospheric nuclear testing conducted by the United States government, during the exposure period. On July 8, 2016, the Assistant Director of the Program denied Sheff's claim. Although he found that Sheff had established that he was diagnosed with one of RECA's covered diseases, and that his mother was physically present in an affected area during the exposure period, he concluded that "time spent *in utero* does not satisfy the exposure eligibility criteria of the Act." (Doc. 1 Ex. 2 at 5.) Sheff filed an administrative appeal on August 31, 2016, challenging this conclusion, but the Appeals Officer affirmed the denial of compensation on November 14, 2016.

RECA provides that an individual who has been denied compensation under the Act may seek judicial review of that decision in a United States District Court. RECA § 6(*l*). The court shall "set aside the denial if it is arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law." *Id*. Sheff claims that DOJ did not properly interpret RECA when it concluded that he was not eligible for compensation.

When reviewing an agency's construction of a statute that it administers, a court first determines whether Congress has directly spoken to the precise question at issue. *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842 (1984). "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Id*. at 842-43. Second, "if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id*. at 843. In this situation, the

court must uphold the agency's interpretation if it "is based on a permissible construction of the statute." *Id.* The agency's interpretation is entitled to deference unless the text "unambiguously forbids" that interpretation, or the interpretation "exceeds the bounds of the permissible" for some other reason. *Barnhart v. Walton*, 535 U.S. 212, 218 (2002). To meet this standard, DOJ's interpretation need not be the only permissible one, or even "the best or most natural one by grammatical or other standards." *Pauley v. BethEnergy Mines, Inc.*, 501 U.S. 680, 702 (1991); *Chem. Mfrs. Ass'n v. Nat. Res. Def. Council, Inc.*, 470 U.S. 116, 125 (1985). Rather, DOJ's interpretation need only fall "within the bounds of reasonable interpretation." *Your Home Visiting Nurse Servs., Inc. v. Shalala*, 525 U.S. 449, 453 (1999). Further, where the agency's interpretation of a statute is longstanding and consistent, that interpretation should be given considerable weight by the court. *Davis v. United States*, 495 U.S. 472, 484 (1990). But a court will not defer to an agency's interpretation that is "arbitrary, capricious, or manifestly contrary to the statute." *United Keetowah Band of Cherokee Indians of Okla. v. U.S. Dept. of Housing & Urban Dev.*, 567 F.3d 1235, 1240 (10th Cir. 2009) (quotation omitted).

DOJ argues that this case can be decided at the first *Chevron* step, because Congress clearly intended RECA's physical presence requirement to encompass only claimants who were already born during the exposure period. Because RECA does not expressly define the term "individual who was physically present" during the exposure period, DOJ claims that I may discern Congress's intent on this issue by "employing traditional tools of statutory construction, includ[ing] examination of the statute's text, structure, purpose, history and relationship to other statutes." (Doc. 13 at 18 (quoting *Hackwell*, 491 F.3d at 1233).)

When interpreting a statute, a court "must give all undefined terms their ordinary meaning." *Nat'l Credit Union Admin. Bd. v. Nomura Home Equity Loan, Inc.*, 764 F.3d 1199,

6

1227 (10th Cir. 2014) (alteration and quotation omitted). DOJ asserts that what it means to be "*in utero*" and what it means to be an "individual who was physically present" can be plainly discerned based on the common meaning of the words. DOJ cites several dictionary definitions in support of its argument that the ordinary meaning of "individual" does not encompass a fetus. Black's Law Dictionary defines "individual" to mean "[e]xisting as an indivisible entity," or "[o]f, relating to, or involving a single person or thing, as opposed to a group," *Individual*, BLACK'S LAW DICTIONARY (10th Ed. 2014), while Webster's Dictionary defines it to mean "inseparable," "being an individual or existing as an indivisible whole," or "existing as a distinct entity: SEPARATE," *Individual*, MERRIAM-WEBSTER'S NEW COLLEGIATE DICTIONARY (9th ed. 1986). DOJ also cites the Dictionary Act, in which Congress has provided definitions for a number of common statutory terms that courts must apply "unless the context indicates otherwise." 1 U.S.C. § 1. The Dictionary Act defines "individual" to "include every infant member of the species homo sapiens who is born alive at any stage of development." *Id*. at § 8(a). DOJ also cites a fairly recent case from the Eighth Circuit, which concluded that "[u]nder a literal reading of the [Dictionary Act], the term 'person' [or 'individual'] does not include fetuses." *United States v. Montgomery*, 635 F.3d 1074, 1086 (8th Cir. 2011).

DOJ further asserts that its interpretation of the term "individual" is the only interpretation that is consistent with the other parts of the Act. In addition to compensation for downwind claims, RECA also provides compensation for an "individual" who was employed in a uranium mine or mill, who transported uranium ore, and who participated onsite in an atmospheric nuclear test. RECA §§ 5(a)(1)(A)(i), 4(a)(2)(C). According to DOJ, the only practical understanding of the word "individual" in these provisions is that it refers to natural persons who were already born during the exposure period – those who could be employed in an

appropriate category or could participate onsite in atmospheric nuclear tests. DOJ argues that, to the extent the Act's distinct provisions use common language, those common words should be read symmetrically. *Envtl. Def. v. Duke Energy Corp.*, 549 U.S. 561, 574 (2007).

DOJ also argues that where Congress intends to extend benefits to cover the *in utero* stage, it does so expressly. DOJ points out that Congress recently amended the statute governing the Vaccine Injury Compensation Program to clarify that "a woman who received a covered vaccine while pregnant and any child who was in utero at the time such woman received the vaccine shall be considered persons to whom the covered vaccine was administered and persons who received the covered vaccine." 21ST Century Cures Act, Pub. L. No. 114-255 § 3093(f)(1) (2016) (amending 42 U.S.C. § 300aa-11). Similarly, in the Unborn Victims of Violence Act of 2004, Congress recognized unborn children as a class of victims not previously protected under federal law, and then expressly criminalized the killing or injuring of "a child, who is in utero" during the commission of certain federal offenses. 18 U.S.C. § 1841(a)(1). There is no similar language in RECA.

DOJ's final argument in support of its position that this case can be decided at the first *Chevron* step is that, since RECA was enacted in 1990, DOJ has repeatedly and consistently denied downwinder claims on the basis that time spent *in utero* is not included for purposes of determining eligibility for compensation under the Act. Yet, when RECA was amended in 2000, broadening the scope of coverage in several respects, Congress did not add coverage for *in utero* exposure, nor did it clarify what it means to be an "individual" who was "physically present." According to DOJ, it is well-established that "an agency's interpretation of a statute may be confirmed or ratified by subsequent congressional failure to change that interpretation." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 45 (1983).

Congress has also failed to address the *in utero* issue since the 2000 RECA amendments, despite the fact that the issue has been brought to its attention. *See* NATIONAL RESEARCH COUNCIL, *supra*, at 203. DOJ concludes that its interpretation of the *in utero* issue has been confirmed or ratified by the failure of Congress to change that interpretation.

Sheff agrees that this case can be decided under *Chevron's* first step. He maintains that RECA unambiguously covers downwinder *in utero* physical presence. Sheff argues that he was an individual when he contracted cancer of the pharynx, one of RECA's specified compensable diseases, and he was also an individual who was physically present *in utero* in an affected area during the exposure period. According to Sheff, logic supports the notion that radioactive fallout from atmospheric nuclear tests impacted all who were present in an affected area regardless of their status of having been born or *in utero*. Further, Congress specifically directed that all reasonable doubt with regard to whether a claim meets the requirements of RECA shall be resolved in favor of the claimant. RECA § 6(b)(1). He notes that the Standard College Dictionary defines "fetus" as: "The individual unborn organism carried within the womb in the later stages of its development; especially, the unborn human organism from the end of the second month of pregnancy until birth." *Fetus*, STANDARD COLLEGE DICTIONARY (1963).

Sheff disputes that DOJ's interpretation of the term "individual" is the only interpretation consistent with other parts of the Act. He argues that onsite participants and uranium workers must prove more than physical presence in an affected area to receive compensation, in contrast to downwinders, who need only prove physical presence in an affected area. He claims that I should not give much credence to Congress's inclusion of benefits for a "person" *in utero* in a recent amendment to the Vaccine Injury Compensation Program, suggesting instead that I should look to the relationship between RECA and the Energy Employees Occupational Illness

9

Compensation Program Act of 2000, 42 U.S.C. § 7384 et seq., to glean the intent of Congress to broadly interpret RECA. *See Murrietta v. U.S. Dept. of Justice*, 217 F. Supp. 3d 1301, 1307-08 (D.N.M. 2016). Finally, he vigorously contests DOJ's argument that its interpretation of the *in utero* issue has been confirmed by actions of Congress.

I decline the parties' invitation to decide this case at the first *Chevron* step. While I reject Sheff's argument that RECA unambiguously covers *in utero* exposure, I am not convinced that the intent of Congress to limit compensation to claimants under RECA to those who were born natural persons during the designated exposure period is unambiguously expressed. Neither RECA nor DOJ's regulations specifically address whether persons like Sheff, who were *in utero* during the exposure period, were "physically present." And the other traditional tools of statutory construction do not all point in one direction. While DOJ relies in part on the Dictionary Act's definition of "individual," the Dictionary Act also provides that "[n]othing in this section shall be construed to affirm, deny, expand, or contract any legal status or legal right applicable to any member of the species homo sapiens at any point prior to being 'born alive' as defined in this section." 1 U.S.C. § 8(c). Further, I agree with Sheff that DOJ's interpretation of the *in utero* issue has not been confirmed or ratified by the failure of Congress to change that interpretation. Although DOJ maintains that it has repeatedly and consistently denied downwinder claims on the basis that time spent *in utero* is not included for purposes of determining eligibility for compensation, it has provided no proof in support of this claim. DOJ has not cited a single reported decision on this issue, or any of its claimed "numerous past decisions denying 'downwinder' claims based on *in utero* exposures." (Doc. 1 Ex. 3 at 4 n.2.) Without proof that DOJ interpreted RECA concerning *in utero* presence, Congress's failure to act on this issue is immaterial.

At step two, if a statute is silent or ambiguous about the precise question at issue, a court must sustain an agency's interpretation if it is based on a permissible construction of the statute. *Walton*, 535 U.S. at 218. To make this determination, a court must decide 1) whether the statute unambiguously forbids the agency's interpretation, and if not, 2) whether the interpretation, for other reasons, exceeds the bounds of the permissible. *Id*. Answering the first query is easy: RECA does not unambiguously forbid DOJ's interpretation. RECA simply never addresses whether individuals who were *in utero* during the exposure period qualify for compensation.

Answering the second query is also fairly easy, because it is clear that DOJ's interpretation is based on a permissible construction of the statute. It is consistent with the statutory language that an "individual who was physically present" may be entitled to compensation. It finds support in the common meaning of the words "individual" and "fetus." It is consistent with other parts of the Act, which provide compensation to an "individual" employed in specific occupations or who participated onsite in atmospheric nuclear testing. And DOJ's interpretation is bolstered by the fact that Congress has explicitly extended benefits to cover the *in utero* stage in other statutes. The fact that DOJ could have interpreted RECA differently on this issue does not mean that DOJ's interpretation exceeds the bounds of the permissible.

Because DOJ's interpretation of the *in utero* issue is based on a permissible construction of RECA, I must grant DOJ's motion to dismiss.

IT IS SO ORDERED.

_____
William P. Lynch
United States Magistrate Judge

A true copy of this order was served
on the date of entry--via mail or electronic
means--to counsel of record and any pro se
party as they are shown on the Court's docket.